UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOHO CO., LTD.,

        Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A TO THE COMPLAINT,

        Defendants.

Civil Action No. 26-cv-2302

## DECLARATION OF SHENGMAO MU

I, Shengmao Mu, declare as follows:

1.      I am an attorney at law, duly admitted to practice before the Courts of the State of New York and the United States District Court for the Southern District of New York. I am one of the attorneys for Plaintiff Toho Co., Ltd. ("Plaintiff"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2.      According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security in 2024, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2024 was over $32.3 billion. The report noted that from 2020 to 2024, the total number of goods seized for IPR violations has more than doubled, and the total MSRP of goods seized for IPR violations every year has increased by

1

415%. The vast majority of seizures from foreign countries come from China and Hong Kong; accounting for approximately 90% of the total quantity seized[1].

3.    In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic[2].

4.    Based on my research, there is no treaty between the United States and China establishing recognition of judgments from United States courts in China.

5.    I am informed and believe that Counterfeiters like Defendants utilize several common tactics to avoid detection or to evade civil liability.

6.    For example, I am informed and believed that Counterfeiters like Defendants will often register new e-commerce stores under new aliases once they receive notice of a lawsuit.

7.    On information and belief, most, if not all, Defendants are located in China. Based on my research, there is no treaty between the United States and China establishing recognition of

---

[1] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

judgments from United States courts in China; infringement must instead be curbed by definitive domestic judgment.

8.    I am informed and believe that infringers like Defendants monitor PACER for new federal filings before an *ex parte* TRO can be imposed or service can be effectuated for the purpose of being able to move assets from their financial accounts to offshore bank accounts outside the jurisdiction of this Court and evade civil liability.

9.    Off-shore e-commerce store operators offering for sale products using infringing intellectual property typically: (1) provide false, misleading and/or incomplete names and physical address information to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their third- party service providers and customers. Email has proved to be a reliable mechanism for quickly providing notice to e-commerce store operators in similar cases.

10.    An investigation of the e-commerce stores operating under the Seller Aliases identified in the Complaint shows that few, if any, provide a complete and accurate physical address on the e-commerce store.  In most instances, Defendants must provide an e-mail address to third-party online marketplace platforms such as PayPal, Shop Pay, Alibaba, Amazon, AliExpress, and Temu when registering their accounts. E-mail address verification is typically a straightforward process where the third-party online marketplace platforms send an e-mail to the provided e-mail address and require the user to click a link in the e-mail. Since an e-commerce store operator can input any physical address, such addresses may be incomplete, false and/or are not where the e-commerce store operator is located. As such, even if a physical address is available, it is not a reliable or the best means for providing notice to Defendant.

11.     I have reviewed the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention") to which China is a signatory. The Hague Convention does not preclude service by e-mail. Additionally, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known[3]."

12.     Someone working under my supervision has attempted to locate the Defendants based upon the information provided on Defendants' websites. As part of that process, both Google Maps and Baidu Maps were utilized to attempt to locate and verify the addresses. It was found that few, if any, Defendants provided a complete and accurate physical address on the e-commerce store. Moreover, the complete addresses that were provided were not located in an area where any businesses potentially linked to the Defendants could be located. None of the addresses provided by Defendants returned a result consistent with a Defendant operating a business at that address. See Exhibit 4 for Plaintiff's effort to locate and verify Defendants' information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This the 20th day of March 2026.

/s/Shengmao Mu
Shengmao Mu

---

[3] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 1969 U.S.T. LEXIS 152, at *16.